IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAISY DANIELS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:04cv1144-C |
| | ) (WO) |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

The plaintiff, Daisy Daniels ("Daniels"), applied for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1383(c)(3), *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Daniels then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. § 405(g) and § 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

judgment by the United States Magistrate Judge. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Administrative Proceedings

Daniels was 46 years old at the time of the hearing before the ALJ.  (R. 192.)  She is a high school graduate.  (*Id.*)  Daniels' prior work experience includes work as a domestic housekeeper.  (R. 193.)  Daniels alleges that she became disabled on December 30, 1994,[4]

---

[4] The ALJ stated that Daniels alleges that she became disabled on January 10, 2003.  (R. 13.)  However, in her application for supplemental security income, Daniels alleges that she became disabled on December 30, 1994.  (R. 40.)  During the hearing, Daniels' representative explained that, in 1999, the Commissioner found Daniels to be disabled with a disability onset of December 30, 1994, but the Commissioner also determined that she was not eligible for benefits due to her husband's income.  (R. 190-91.)  The representative further explained that, because Daniels' husband left her in August 2002, Daniels filed a new application in January 2003.  (*Id.*)  The findings from the prior proceedings are not included in the record.

due to arthritis, hypertension, low potassium, and colitis. (R. 40, 45, 196.) Following the hearing, the ALJ concluded that Daniels suffers from severe impairments of osteoarthritis, hypertension, obesity, and colitis. (R. 16.) The ALJ concluded that Daniels retains the residual functional capacity to perform light work and that she could perform her past relevant work as a domestic housekeeper. (R. 16-17.) Accordingly, the ALJ concluded that Daniels is not disabled. (R. 17.)

### IV. The Plaintiff's Claims

As stated by Daniels, she presents the following issues for the court's review:

1. The ALJ failed to articulate clear reasons for rejecting long-time treating physician Dr. Bendiger's opinion, as required by SSR 96-8p and Eleventh Circuit case law.

2. The ALJ failed to make findings regarding the physical and mental demands of plaintiff's past work.

3. The ALJ failed to properly assess the effect of claimant's obesity on her ability to perform work-related functions.

4. The ALJ failed to properly assess the plaintiff's credibility.

(Doc. # 7 at 5-6.)

### V. Discussion

Daniels raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of all of Daniels' specific arguments because the court concludes that the ALJ erred as a matter of law, and, thus, this case is due to be remanded for further

proceedings.

### A.  The Treating Physician's Opinion

The ALJ discounted the treating physician's opinion in his December 16, 2003, medical source statement that Daniels possessed the functional capacity for less than sedentary work. (R. 16.) Specifically, the ALJ concluded that their was no objective evidence to support Dr. Richard Bendinger's assessment that Daniels' medical conditions cause her alleged symptoms. (*Id*.)

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to the claimant's impairments. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

A review of the medical records indicating that Daniels was treated for arthritis and bursitis from 1997 through 2004 clearly demonstrate that the ALJ's conclusion regarding Dr. Bendinger's assessment is not supported by substantial evidence. On May 23, 1997, Daniels

presented to Dr. Richard Meadows,[5] her treating physician, complaining of a swollen back and ankles and was administered an injection of Depo-Medrol.[6] (R. 158.)  She was also prescribed Relafen, an anti-inflammatory medication.[7] (*Id.*)  On September 5, 1997, Daniels returned to Dr. Meadows' office complaining of pain in her left shoulder, back, ankles, and neck and was administered a shot of Depo-Medrol. (R. 157.)  On December 4, 1997, Daniels was prescribed medication for her complaints of right knee pain. (R. 155.)

On March 13, 1998, Daniels complained of lower back pain and a swollen right knee and was prescribed Naprosyn[8] to treat her symptoms. (R. 153.)  On May 18, 1998, Dr. Meadows' examination indicated that Daniels' left ankle was swollen, puffy, and tender. (R. 149.)  Daniels was prescribed Naprosyn and administered a shot of Depo-Medrol. (*Id.*)  In May or June of 1998, Daniels was prescribed anti-inflammatory medication, including Daypro[9] and Naprosyn. (R. 148.)  On September and October of 1998, Daniels was prescribed Naprosyn for her complaints of lower right quadrant and right arm pain. (R. 144-45.)

On January 18, 1999, Dr. Meadows noted that Daniels suffered right shoulder pain

---

[5]The record demonstrates that Dr. Meadows and Dr. Bendinger are partners in a family practice clinic.

[6]Depo-Medrol is used to reduce swelling in the body, including tendons.  *See* http://www/rxlist.com/cgi/pharmclips2.cgi?keyword=%20Depo-Medrol%AE.

[7]Relafen, also generically known as Nabumetone, is used to treat pain and inflammation.  *See* www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Nabumetone.

[8]Naprosyn, also generically known as Naproxen Sodium, is used to treat pain, inflammation, muscle aches, and arthritis.  *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Naproxen.

[9]Daypro is used to treat pain, inflammation, muscle aches, and arthritis.  *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Daypro%AE.

when raising her arm and complained of foot pain. (R. 142.) Dr. Meadows diagnosed Daniels as suffering from bursitis and tendonitis and prescribed her anti-inflammatory drugs, including Naprosyn and Decadron.[10] (*Id.*) On February 24, 1999, an x-ray indicated soft tissue swelling over the lateral malleolus. (R. 141.) Dr. Meadows diagnosed Daniels as suffering from osteoarthritis and tendonitis and prescribed her Naprosyn and another anti-inflammatory medication, Feldene.[11] (R. 139.) On April 14, 1999, Daniels received a Depo-Medrol injection for her complaints of back pain. (R. 136.) Dr. Meadows noted that Daniels should be referred to an orthopedic specialist or should receive an epidural if her back condition did not improve. (*Id.*) On November 15, 1999, Daniels was prescribed Decadron, Naprosyn, and a Sterapred dosepak,[12] an anti-inflammatory medication, for her complaints of right shoulder and foot pain. (R. 131.)

In July 2000, Dr. Meadows noted that Daniels' mild ankle edema was the result of osteoarthritis and prescribed her Naprosyn. (R. 127.) On March 20, 2001, she received an additional prescription for Naprosyn. (R. 124.) On October 15, 2001, Daniels presented to Dr. Meadows with complaints of a swollen back and leg pain. (R. 123.) Dr. Williams diagnosed Daniels as suffering from osteoarthritis and sciatica and prescribed her Naprosyn. (*Id.*)

---

[10]Decadron is used to reduce swelling and inflammation in the body. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Decadron%AE.

[11]Feldene is used to treat pain, inflammation, muscle aches, and arthritis. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Feldene%AE.

[12]Sterapred, also generically known as Prednisone, is an adrenal corticosteroid which is used to reduce inflammation in the body. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Prednisone.

On January 6, 2003, Dr. Williams diagnosed Daniels as suffering from osteoarthritis and prescribed Naprosyn. (R. 119.) On June 19, 2003, Daniels was prescribed Naprosyn. (R. 115.) On November 5, 2003, Daniels presented to her treating physician with complaints of right knee pain and left ankle pain and was prescribed Naprosyn and Vioxx.[13] (R. 173.) On December 16, 2003, Dr. Bendinger issued a medical source statement indicating that Daniels suffers from an arthritic back. (R. 171.)

On May 4, 2004, Daniels right knee was x-rayed to evaluate any arthritic changes. (R. 184.) Dr. Meadows diagnosed Daniels as suffering from osteoarthritis and prescribed her Naprosyn and provided her a sample of Vioxx. (R. 181.) Daniels also received a Depo-Medrol injection. (*Id*.) On June 15, 2004, Daniels' treating physician noted that her right knee was swollen and that she suffered from right knee effusion. (R. 180.) The treating physician referred Daniels to an orthopedic specialist. (*Id*.) Because the numerous medical records indicate that Daniels was diagnosed with and received treatment for arthritis, bursitis, and other medically-related conditions from 1997 through 2004, the court concludes that the ALJ's determination that there was no objective medical evidence to support Dr. Bendinger's assessment that Daniels' medical conditions caused her alleged symptoms is not supported by substantial evidence.

### B. Failure to Develop the Record

---

[13]Vioxx is used for the treatment of the symptoms of arthritis, such as joint pain, inflammation, swelling, and stiffness. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Vioxx%AE.

The ALJ failed to fully develop the record regarding Daniels' medical conditions. An administrative law judge has a duty to develop a full and fair record. *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). Although Daniels was sent for a consultative examination, it is apparent from the record that no additional testing or x-rays were obtained to determine the extent of Daniels' osteoarthritis. The court is at a loss as to why the ALJ would order a consultative examination without requesting x-rays, scans, or other testing be done, particularly in light of Daniels' complaints. *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) ("fail to see how the ALJ could have properly assessed the extent of arthritis without updated x-rays"); *Baker v. Bowen*, 886 F.2d 289, 292 (10th Cir. 1989) (failure to obtain x-rays particularly a problem when claimant is complaining of arthritis, a disease commonly diagnosed by x-rays). Pursuant to 20 C.F.R. § 416.917, the ALJ is required to order additional medical tests when the claimant's medical sources do not give sufficient medical evidence to make a determination as to disability. As early as 1999, Daniels' treating physician noted that Daniels should be referred to an orthopedic specialist or receive epidural injections if her back pain did not improve. (R. 136.) On June 15, 2004, the treating physician also determined that a referral to an orthopedic specialist was necessary and scheduled an appointment for Daniels to be evaluated by Dr. Alford in July of 2004. (R. 180.) Despite the evidence in the record and without securing additional information, the ALJ discounted the treating physician's opinion. Thus, Daniels' treating physicians recognized the need for further evaluations and objective testing. The court therefore concludes that the ALJ should not have discounted Dr. Bendinger's opinion based on the lack of objective

medical evidence when the record clearly demonstrates that additional objective evidence in the form of an orthopedic evaluation was necessary. The ALJ's failure to fully develop the record requires that this case be remanded for further proceedings. The ALJ could not make an informed decision based on the record before him and thus, his decision is not supported by substantial evidence.

### C. Credibility Determination

Daniels alleges that the ALJ failed to properly assess her credibility.[14] The court agrees. The ALJ discounted Daniels' testimony regarding pain as follows:

> . . . The undersigned Administrate Law Judge finds that the medical evidence of record indicates that the claimant has an underlying impairment that could reasonably be expected to give rise to mild to moderate pain. The record does not support a finding that she experiences disabling pain. There is no evidence of pain management treatment or prescription of narcotic pain medications. The claimant testified that she takes hot baths and applies Ben-Gay to relieve her symptoms. Further, claimant has described diverse daily activities consistent with a wide range of work related capabilities, and has endorsed no side effects from her medication.

(R. 16.) First, as the ALJ found, arthritis is a condition that could reasonably expected to produce pain. However, the ALJ discredited Daniels' testimony based on her lack of pain management treatment and her lack of prescription medication. The absence of prescription pain medicine may be a valid reason for discrediting a plaintiff's testimony of pain. *See Jones*

---

[14] The court notes that, in his summary of Daniels' testimony, the ALJ erroneously states that Daniels testified that she drives thirty miles to see her doctor and that she vacuums. (R. 14.) During the hearing, Daniels testified that she drives approximately ten miles to visit relatives and that her daughter helps with vacuuming. (R. 205-06.) Although Daniels testified that her physician's office is a thirty-minute drive from her home, she did not state that she drives to her appointments. (R. 205.)

*v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  The problem with the ALJ's determination is that it is not supported by the evidence.  The record is replete with evidence of pain management treatment, including prescriptions for anti-inflammatory medication and the administration of injections. (R. 115, 119, 123, 124, 127, 131, 136, 139, 142, 144-45, 149, 153, 155, 157-58, 173, 181.)  Thus, it is clear that Daniels received extensive treatment for her allegations of pain.

Although the ALJ concludes that the evidence does not support a finding of disabling pain because Daniels was not prescribed narcotic medication, there is no requirement that osteoarthritis sufferers take narcotics as part of their pain treatment regimen.  The general viewpoint is that narcotic painkillers are addictive and therefore are not commonly used to treat osteoarthritis, a chronic condition.  *See* National Institute of Arthritis and Musculoskeletal and Skin Diseases, *Handout on Health: Osteoarthritis* (July 2002), *available at* www.niams.nih.gov/hi/topics/ arthritis/oahandout.htm.  Consequently, the ALJ's failure to properly assess Daniels' credibility coupled with his failure to fully develop the record and properly discount the treating physician's opinion requires that this case be remanded to the Commissioner.

Because the court concludes that the ALJ erred as a matter of law, the court pretermits discussion of Daniels' arguments that the ALJ failed to make findings regarding the physical and mental demands of her past work and failed to properly assess the effect of her obesity on her ability to perform work-related functions.  On remand, the ALJ should consider the opinions of Daniels' treating physicians and secure additional medical evaluations regarding

her allegations of pain.

## VI.  Conclusion

Accordingly, it be and is hereby

ORDERED that this case be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

Done this 15th day of June, 2005.

                                                    /s/Charles S. Coody  
                                                  CHARLES S. COODY  
                                                  CHIEF UNITED STATES MAGISTRATE JUDGE